IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Frank D. Willis, et al.,                                    Case No. 5:05 CV 121

                              Plaintiffs        MEMORANDUM OPINION
                                                AND ORDER_____

        -vs-
                                                JUDGE JACK ZOUHARY
Charter Township of Emmett, et al.,

                              Defendants

### BACKGROUND

        Plaintiffs, Frank Willis and Michael Willis, co-personal representatives of the estate of

Christopher Willis, have sued several individuals and entities based upon a car accident in which

Christopher Willis died.  Plaintiffs allege that at approximately 6:30 a.m., Christopher, while driving

on Interstate 94, left his lane of traffic, crossed the median, and collided with a car and a semi-truck

(Compl. ¶ 1).  Plaintiffs further allege that while numerous firemen, public safety officers, and medics

responded to the accident scene, Christopher did not receive any medical attention for over two and

a half hours because the responders thought he was dead and ignored a witness' claim that

Christopher was alive (Compl. ¶¶ 5, 15-16, 19, 23, 25-32).  Based upon information relayed by phone

from a medic on the scene that Christopher had no pulse, an emergency room physician at a local

hospital pronounced Christopher dead (Compl. ¶¶ 50-54).  It was not until the two and a half hours

had passed and the Medical Examiner staff began to remove the body that they observed Christopher

to be breathing, at which point an emergency medical helicopter was called in to transport Christopher to a hospital (Compl. ¶¶ 66-68).  Christopher died shortly thereafter just before 10:00 a.m.

Among others, Plaintiffs have sued James M. Volkel, M.D. ("Dr. Volkel") and Battle Creek Emergency Physicians PC ("BCEP"); Sgt. James Campbell ("Sgt. Campbell"); and Scott Brandenburg, Kimberly Vanvorst, Michael Bentley, Bridget Ross, and Life Care Ambulance Service (collectively the "Lifecare Defendants").  According to the Second Amended Complaint, Dr. Volkel was an employee of BCEP and was the emergency room physician who made the initial death pronouncement; Sgt. Campbell was a Michigan State Police Accident Reconstructionist who told the Medical Examiner staff that he needed to take some photographs and measurements of the scene before Christopher's body could be removed; and the Lifecare Defendants who were the Emergency Medical Technicians who failed to examine Christopher.  Plaintiffs claim Defendants deprived Christopher of his right to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment and his right to due process under the Fourteenth Amendment in violation of 42 U.S.C. § 1983.

Pending before the Court are Dr. Volkel and BCEP's Motion To Dismiss pursuant to Federal Civil Rule 12(b)(6) or Alternatively for Summary Judgment pursuant to Federal Civil Rule 56(c) (Doc. No. 154); Sgt. Campbell's Motion To Dismiss pursuant to Federal Civil Rule 12(b)(6) or Alternatively for Summary Judgment pursuant to Federal Civil Rule 56(c) (Doc. No. 128); and the Lifecare Defendants' Motion to Dismiss pursuant to Federal Civil Rule 12(b)(6) (Doc. Nos. 171 and 175).  Although Dr. Volkel and BCEP's Motion and Sgt. Campbell's Motion are brought in the alternative as motions for summary judgment, the Court will consider the instant Motions under the Rule 12(b)(6) standard based solely upon the pleadings.

2

### RULE 12(b)(6) STANDARD

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The moving party has the burden of proving that no claim exists.  Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions or legal conclusions.  *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).  All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party.  2 *Moore's Federal Practice*, § 12.34[1][b] (Matthew Bender 3d ed. 2003).  The Court need not, however, accept unwarranted factual inferences.  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, _____ U.S. ____, 127 S. Ct. 1955, 1974 (2007).

In the context of claims under Section 1983, the Sixth Circuit has stated that a plaintiff must offer more than conclusory allegations of unconstitutional conduct.  *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) ("conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under section 1983") (citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)).  Rather, the pleadings must contain some factual basis to show the plaintiff can sustain all of the material elements of his claim.  *See id.*

### REQUIREMENTS FOR SECTION 1983 ACTION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) the violation of a right secured by the federal Constitution or laws and (2) the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102

F.3d 810, 814 (6th Cir. 1996).  "If a plaintiff fails to make a showing on any essential element of a Section 1983 claim, it must fail."  *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).  Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, a plaintiff must identify the right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  As set forth below, both elements of a Section 1983 claim are at issue in the present Motions.

**PARTIES' ARGUMENTS**

Dr. Volkel and BCEP contend the Complaint fails to state a claim under Section 1983 because: (1) Plaintiffs failed to allege they are state actors; (2) the facts alleged by Plaintiffs do not give rise to a constitutional violation; and (3) in any event, Defendants are entitled to qualified immunity.

Regarding the state actor requirement, Plaintiffs concede the Complaint does not specifically allege that Dr. Volkel or BCEP were state actors at the time of the crash, but they claim the Complaint puts Defendants on notice of the claims.  Plaintiffs contend Dr. Volkel was a state actor because he obtained aid from state officials, making his conduct chargeable to the state, and because state actors relied upon Dr. Volkel's death pronouncement, making Dr. Volkel's conduct fairly attributable to the state.

Regarding the existence of a constitutional violation, Plaintiffs concede that under *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), the Due Process Clause of the Fourteenth Amendment does not require a state to provide medical care to those in need, but they argue this case falls within the two exceptions identified in *DeShaney* for persons held in custody by the state and for situations involving state-created danger.  *See id.* at 199-202.  Plaintiffs claim this case is similar to *Beck v. Haik*, No. 99-1050, 2000 WL 1597942 (6th Cir. Oct. 17, 2000), which held that allegations that law enforcement officers prevented rescue efforts by qualified civilian divers but

4

failed to provide meaningful alternative rescue services were sufficient to give rise to a due process violation. Plaintiffs assert Dr. Volkel's death pronouncement is similar to the officers' interference in *Beck* because Dr. Volkel should have known that his determination would have prevented or deterred emergency rescue personnel from attending to Christopher.

Finally, regarding qualified immunity, Plaintiffs contend Dr. Volkel and BCEP violated Christopher's clearly established rights to state-provided medical care (under both exceptions in *DeShaney*). They further contend Dr. Volkel and BCEP were deliberately indifferent to Christopher's serious medical needs, similar to the circumstances in *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596 (6th Cir. 2005).

The Lifecare Defendants contend in their Motion that dismissal is required because they are not state actors as required for a claim under Section 1983. They point out that the Complaint fails to allege that they are state actors. Plaintiffs admit the Lifecare Defendants are private actors, (6/12/07 Hr'g Tr. at 6), but they assert that Lifecare's conduct can still be attributable to the state under any of three recognized tests: the public function test, the state compulsion test, and the nexus test. *See Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) (setting forth and discussing the three tests). Plaintiffs further contend the Lifecare Defendants can also be liable under Section 1983 pursuant to *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), in which the Supreme Court stated:

> Private persons, jointly engaged with state officials in [a] prohibited action, are acting under color of law for purposes of the statute. To act under color of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State.

*Id. at* 152 (internal quotation marks and citation omitted).

Finally, in his Motion, Sgt. Campbell argues that: (1) Plaintiffs' claims against Sgt. Campbell are brought against him in his official capacity and therefore barred by Eleventh Amendment immunity, and under *Will v. Michigan State Police*, 491 U.S. 58 (1989), which holds that a state is not a "person" for purposes of Section 1983; (2) Plaintiffs fail to allege a Fourth Amendment violation; (3) Plaintiffs' due process claim fails under *DeShaney* and does not fall within either exception mentioned above; and (4) Sgt. Campbell is entitled to qualified immunity.  Sgt. Campbell further contends, as do Dr. Volkel and BCEP, that this case is similar to *Jackson v. Schultz*, 429 F.3d 586 (6th Cir. 2005), in which the Sixth Circuit rejected a similar claim.

Plaintiffs concede they have sued Sgt. Campbell in his official capacity, but they argue that dismissal is not required because their response to Sgt. Campbell's Motion provides him adequate notice that he is being sued in his individual capacity as well.  As for the substantive issue, the due process violation, Plaintiffs acknowledge *DeShaney*'s holding, but they argue Sgt. Campbell took Christopher into custody because he restrained Christopher's personal liberty by showing his authority and acquiring control of the accident scene in order to take photographs and measurements.  In other words, Plaintiffs allege Sgt. Campbell's act of excluding others from the scene prevented medical providers from accessing Christopher until Sgt. Campbell was done with his work (Compl. ¶ 58), similar to *Beck* where the defendant officers' acts prevented volunteer divers from attempting a timely rescue of the decedent.  Finally, Plaintiffs contend that under *Owensby*, *supra*, Christopher's right to medical care was clearly established, thus requiring denial of qualified immunity to Sgt. Campbell.

**DISCUSSION**

**1.      State Actor Requirement**

"[T]he under-color-of-state-law element of Section 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).   The Supreme Court has observed that the state actor requirement is a necessary limitation upon the reach of Section 1983, because "[w]ithout a limitation such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982).

As mentioned above, the Sixth Circuit recognizes three tests for determining whether a particular defendant was acting under color of state law: (1) acting under the compulsion of the state; (2) public function; and (3) the nexus approach. *See Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).   Under the compulsion test, a plaintiff must show the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. *See Ellison v. Garbarino*, 48 F.3d 192,  195 (6th Cir. 1995) (citing *Wolotsky*, 960 F.2d at 1335).   The public function test "requires that the private entity exercise powers which are typically reserved to the state . . . ." *Id.* (quoting *Wolotsky*).   Finally, the nexus test requires the plaintiff to show a sufficiently close relationship between the private individual and the state to be a participant or interdependent with the state. *See id.*   Plaintiffs relied only upon the nexus test in their brief, but during the hearing on June 12, 2007, they argued for the first time that Dr. Volkel was also a state actor under the compulsion test.

7

Plaintiffs contend Dr. Volkel (and BCEP) was a state actor because a sufficient nexus existed between Dr. Volkel and other state actors to make his conduct attributable to the state. Relying on *Lugar*, *supra*, Plaintiffs contend Dr. Volkel acted together with or obtained significant aid from state officials. According to the Complaint, however, the only connection Dr. Volkel had with any state official was that he received information provided by Bentley, a Lifecare employee and private individual, regarding Christopher's condition, which may have been based in part upon information from state actors (Compl. ¶¶ 50-54). This is an insufficient connection to render Dr. Volkel a state actor.

In *Styles v. McGinnis*, 28 F. App'x 362 (6th Cir. 2001), the Sixth Circuit held that an emergency room physician who treated the plaintiff-prisoner did not qualify as a state actor. *See id.* at 364. Citing the district court's analysis, the appellate court stated that the physician had no contractual relationship with the state, was not employed by the state or any governmental agency, and provided emergency staffing services to the hospital solely as an independent contractor. *See id.* The allegations in this case are even less compelling than those in *Styles* because in *Styles*, prison guards took the plaintiff to the hospital and actually assisted the physician in restraining the plaintiff while the physician treated the plaintiff. Here, Dr. Volkel's contact with state officials was even more tenuous because he had no direct contact with state officials. *See Pino v. Higgs*, 75 F.3d 1451 (10th Cir. 1996) (holding that an emergency room physician on call when a police officer brought the plaintiff to the hospital and who certified the plaintiff under a state commitment statute for involuntary mental health examinations was not a state actor). Furthermore, there is no allegation in the Complaint that Dr. Volkel had any reason to believe that a state actor would take or refrain from taking any specific action based upon his death pronouncement. Plaintiffs have cited no case that has

8

found an emergency room physician to be a state actor in similar circumstances, nor has the Court found any authority suggesting that Dr. Volkel could be considered a state actor in this case.

Plaintiffs also contend Dr. Volkel is a state actor because he was compelled by M.C.L.A. § 333.1033 to pronounce Christopher dead. The statute merely provides that "a physician or registered nurse may pronounce the death of a person in accordance with this act." Nothing in the statute *required* Dr. Volkel to do so. While the statute does require a physician who makes a determination of death to apply accepted medical standards, the Supreme Court has observed that a state is not responsible for decisions that "ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State." *Blum v. Yaretsky*, 457 U.S. at 993. The fact that Dr. Volkel was licensed by the state to practice medicine and was thus authorized to perform various procedures is insufficient to transform his status from private actor to state actor. *See Kottmyer v. Maas*, 436 F.3d 684, 688-89 (6th Cir. 2006).

Plaintiffs' arguments regarding the Lifecare Defendants are even less compelling. Plaintiffs do not specify which, if any, of the three tests cited above support their claim that the Lifecare Defendants were state actors. Plaintiffs assert that "Defendants are specifically authorized by state statute to provide emergency medical services to those in need. In many situations they are immunized to a great extent pursuant to state statute" (Pls' Br. Opp'n at 7). As set forth above with regard to Dr. Volkel, however, the fact that the state has authorized, but neither compels nor coerces, a person to do something is insufficient to bestow state actor status upon a private individual. *See Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 171 (3d Cir. 2004) (a mental health care facility and mental health care professions were not state actors because the Pennsylvania statute did not

9

coerce the defendants to file an application for an emergency examination, but merely permitted them to do so).

To the extent Plaintiffs rely upon *Adickes* to hold either the Lifecare Defendants or Dr. Volkel liable as state actors based upon their participation in joint activity with state actors, such argument fails because the Complaint is devoid of any allegation that even suggests these Defendants were engaged in any joint activity with state actors amounting to a constitutional deprivation. Plaintiffs fail to allege anything that resembles joint action or a conspiracy that would suffice to invoke *Adickes*.

Plaintiffs also complain that because the Federal Rules of Civil Procedure require only notice pleading, they should be held to have satisfied the applicable standard under Rule 8(a) to put Defendants on notice of their claims against them. The Sixth Circuit has stated that "mere conclusory statements that the defendants were acting under color of law is insufficient as we are not required to accept as true conclusory legal statements when determining whether a plaintiff has stated a claim under section 1983." *Kottmyer*, 436 F.3d at 688. Recently, in *Bell Atlantic Corp.*, *supra*, the Supreme Court addressed Rule 8's pleading requirements in the context of an antitrust claim under the Sherman Act based upon a theory of parallel action. The Court observed:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleading is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Id.* at 1964-65 (citations omitted). Thus, even though Plaintiffs have set forth the facts of the accident and stated that they are suing Defendants under Section 1983, the Complaint cannot withstand a

motion to dismiss because it omits facts on the key issue of whether these Defendants were state actors.

### 2.        Constitutional Violation

Initially, the Court notes that while Plaintiffs mentioned the Fourth Amendment in the Complaint, they have not argued in response to the instant Motions that they have stated a claim for a Fourth Amendment violation.  Rather, the entire focus of their argument is upon their due process claim.  In any event, there is no plausible argument that Christopher was seized within the meaning of the Fourth Amendment, and such claim is without merit.

Plaintiffs contend they have alleged a due process claim because the *DeShaney* exceptions apply.  In *Jackson v. Schultz*, 429 F.3d 586 (6th Cir. 2005), the plaintiff sued two Detroit fire department EMTs alleging they violated the decedent's due process rights by failing to provide medical care to the decedent while he was in custody.  The EMTs were called to the scene of an altercation in which the decedent had been shot.  They placed the decedent in their ambulance where he later died without any attempt at life support.  In affirming the dismissal of the complaint, the Sixth Circuit recited *DeShaney*'s rule that a failure to provide medical care does not give rise to a constitutional violation.  It also concluded that neither exception applied.  Discussing the custody exception, the court noted that placing the decedent, who was unconscious, into an ambulance did not constitute custody under *DeShaney* because the EMTs did nothing to restrain him.  *See id.* at 591.  The court observed:

> The restraints of personal liberty mentioned in *DeShaney* all require some state action that applies force (or the threat of force) and show of authority made with the intent of acquiring physical control.  Because the decedent was unconscious, the proper custody inquiry focuses on what the EMTs did to restrain him. . . .  The EMTs did not cause decedent to be shot nor did they render him unconscious.  There is no allegation that the EMTs restrained or handcuffed the decedent.  There is no allegation that the

11

decedent was not free to leave the ambulance or be removed from the ambulance. Decedent's liberty was "constrained" by his incapacity, and his incapacity was in no way caused by the defendants.

*Id.* at 590-91.

Regarding the state-created danger exception, the court held that the plaintiff failed to plead sufficient facts to allege that exception, which requires a plaintiff to show: (1) affirmative acts by the state that "create or increase the risk that an individual will be exposed to private acts of violence"; (2) that the state's acts placed the victim specifically at risk, as opposed to a risk that affects the public at large; and (3) that the state knew or should have known that its actions specifically endangered the decedent. *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). The court held that the plaintiff's complaint could not support a theory of state-created danger because moving the plaintiff to the ambulance did not create or increase the risk of private acts of violence. *See Jackson*, 429 F.3d at 591.

The factual bases in this case for both the custody exception and the state-created danger exception are even weaker than in *Jackson*. The custody exception fails because there is no allegation that any Defendant (assuming Dr. Volkel and the Lifecare Defendants were state actors) did anything to restrain Christopher. As in *Jackson*, Christopher's liberty was restrained not by Defendants, but instead by his incapacity, both physically and mentally, to remove himself from the situation. In short, nothing alleged in the Complaint indicates any Defendant made a show of authority with an intent to acquire physical custody of Christopher. Similarly, Plaintiffs' allegations do not show Defendants took any action toward Plaintiff that increased the risk of private acts of violence or harm to Christopher. While Defendants may have failed to render medical aid to Christopher, they did nothing to increase the risk of danger to him. *See also Peete v. Metro. Gov't of Nashville & Davidson*

12

*County*, 486 F.3d 217, 223 (6th Cir. 2007) (holding that the state-created danger exception did not apply where the defendant firefighters and rescue personnel restrained the decedent during a seizure because the defendants' actions did not expose the decedent to private acts of violence).

Plaintiffs also contend that this case is similar to *Beck*, *supra*, but the Court disagrees.  As set forth above, *Beck* recognized a due process claim in the situation where police officers prohibit civilians from attempting a rescue but do not provide a state-sponsored alternative means of rescue. With respect to Dr. Volkel, Plaintiffs' only allegation is that he made the death pronouncement by telephone.  There is no allegation that he interfered with any private rescue attempt.  The same is true for the Lifecare Defendants.  Plaintiffs' argument regarding Sgt. Campbell is slightly more plausible, but only because he is the only Defendant alleged to have taken any act to limit someone's access to Christopher.  However, any similarity between this case and *Beck* ends there.  Unlike *Beck*, this was not a rescue situation because Christopher had already been pronounced (erroneously) dead.  Thus, Sgt. Campbell was not preventing would-be rescuers from saving Christopher or rendering treatment, but instead prevented investigators from removing the body (Compl. ¶ 58.)  Furthermore, *Beck* pertains to governmental action that interferes with private rescue efforts, which is not the case here. Accordingly, there is no basis for a due process claim.[1]

---

[1]

Because the Court has concluded that Plaintiffs' due process claim fails on the merits, the Court need not address Sgt. Campbell's official capacity argument.

13

### 3.      Qualified Immunity

Qualified immunity involves a two-step determination: (1) plaintiff must identify a constitutional right that has been violated; and (2) plaintiff must demonstrate that the right was clearly established, such that a reasonable person in the defendant's position would have known that his actions violated that right.  *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005).  If a court finds that the plaintiff fails to allege a violation of a constitutional right, it need not reach the issue of qualified immunity.  *See Mays v. City of Dayton*, 134 F.3d 809, 813 (6th Cir. 1998).

Qualified immunity protects only those who unknowingly violate the law.  *See Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 824 (6th Cir. 2007) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).   Qualified immunity shields "[g]overnment officials performing discretionary functions" from liability for civil damages "as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Poe v. Haydon*, 853 F.2d 418, 423 (6th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A law enforcement officer is entitled to qualified immunity if "a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the [] officer[] possessed."  *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

To be clearly established, "the law must be clear in regard to the official's particular actions in the particular situation."  *Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir. 1991).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing" violates federal law.  *Anderson*, 483 U.S. at 640.  While replication of the official's specific conduct is not required to overcome qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable

14

government agent that what defendant is doing violates federal law *in the circumstances*." *Saylor v. Bd. of Educ.*, 118 F.3d 507, 515 (6th Cir. 1997) (quoting *Lassiter v. Ala. A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc)). In the Sixth Circuit, courts look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other courts within the Sixth Circuit, and finally to decisions of other circuits. *See Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). The question is whether the Defendants had "fair warning" that their actions were unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Plaintiffs cannot show that Defendants had fair warning that their actions were unconstitutional. *DeShaney* establishes the general rule that there is no due process violation for failing to provide medical care, with only two limited exceptions. *Jackson,* which is factually similar to this case but, if anything, provides a stronger basis for finding a constitutional violation because the defendants in that case actually moved the decedent and placed him in an ambulance, shows that Defendants had no notice that their alleged acts violated Christopher's rights under either of the *DeShaney* exceptions. In other words, if there was no violation in *Jackson*, there certainly would be no violation here. Similarly, for the reasons set forth above, *Beck* involved a rescue situation and would not have provided any guidance to Defendants in this case. Finally, *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596 (6th Cir. 2005), is distinguishable from this case because the officers in *Owensby* had placed the decedent in custody -- the officers had tackled the decedent, handcuffed him, and placed him in the back seat of the police cruiser. There are no such facts here.

## CONCLUSION

In sum, Plaintiffs fail to state a claim against Dr. Volkel, BCEP, and the Lifecare Defendants because they were not state actors.  Plaintiffs also fail to state a claim against all Defendants because Plaintiffs fail to allege a violation of any constitutional right and, in any event, Defendants are entitled to qualified immunity.

For the foregoing reasons, the Court grants Defendants' Motions To Dismiss (Doc. Nos. 128, 154, 171, and 175).

IT IS SO ORDERED.

        _s/ Jack Zouhary_____
JACK ZOUHARY
U. S. DISTRICT JUDGE

August 30, 2007